We'll hear argument this morning in Case 21-887, Perez v. Sturgis Public Schools. Mr. Martinez? Mr. Chief Justice, and may it please the Court, for 12 years, Sturgis neglected Miguel, denied him an education, and lied to his parents about the progress he was allegedly making in school. This shameful conduct permanently stunted Miguel's ability to communicate with the outside world. It also violated two federal statutes, the IDEA and the ADA, giving different remedies to victims of discrimination. Miguel responded by doing everything the IDEA wants him to do. He filed an IDEA agency claim. He followed the IDEA settlement procedures. And he accepted a favorable settlement, giving him full IDEA relief, including an immediate fate. Sturgis wants you to hold that this settlement extinguishes Miguel's separate and distinct rights to money damages under the ADA. You should reject that. I want to emphasize three points. First, the text only requires exhaustion if a non-IDEA claim seeks relief that's actually available under the IDEA. Exhaustion isn't required in cases like this one seeking only money damages, a remedy the IDEA does not authorize. Second, Miguel's settlement fully exhausted the IDEA procedures. Further exhaustion is unnecessary and it's futile because it would be pointless. Miguel has already received everything he's entitled to under the IDEA statute. And third, the net effect of Sturgis's arguments here is to defy the IDEA's clear purpose. That purpose is twofold.  And two, preserving their legal rights under other statutes in the Constitution. Sturgis puts these goals on a collision course with each other. In any given case, its rule will either disincentivize settlements and block immediate fate relief, or it will nullify rights under other statutes. That makes no sense. Congress didn't punish kids for saying yes to favorable IDEA settlements. One way or the other, this case should proceed. I welcome the Court's questions. If the statute were written in a way that you had a progression of remedies from administrative, from informal to formal, and it was about the very same thing, that is the education of a petitioner, then wouldn't this be exhausted at some level? Your Honor, just to step back and clarify, we have a number of different arguments. I guess the difficulty I'm having is I can't see where ADA fits in with IDEA. It seems to be an entirely different remedy. And when we have PLRA cases, it's usually about the same thing. A hundred percent, Your Honor. I think that's exactly the right way to think about the statute. And I think what Congress was trying to do here was essentially say, we want you to have rights under both statutes. We want you to be able to go into court if necessary and vindicate your separate rights to separate types of relief under both statutes. But in certain circumstances, we want you to go through the IDEA administrative procedures first. And the text of the statute says that if your ADA claim is only seeking things that you can't get under the IDEA. In the words of Fry, if the consequence of your ADA claim, if you brought it in the IDEA procedure, it would be that the IDEA hearing officer would have to send you away empty-handed because that statute just does not provide you that type of relief. That type of relief is not available. Then you do not have to exhaust. I guess that's why I'm having trouble considering it exhaustion. Right. Because it seems to be normally you would think of exhaustion as being similar. The relief would be similar to the exhausted claims. Exactly. This seems to be an entirely different statute. So I don't understand even the use of the term exhaustion here. I think it's a unique sort of a one-of-a-kind statute. And I think that in this kind of circumstance, when you have a unique statute, two things. One, it's especially important to focus on the exact text of the statute. In the text of the statute, the overwhelmingly most reasonable reading of the statute, the only reasonable reading of the statute in our view, is that if you are seeking money damages and everyone agrees money damages are not available under the IDEA, then you just do not have to exhaust. The exhaustion requirement doesn't apply. Even if you disagreed with us on that, though, I think that in a situation like this, where the exhaustion requirement is saying you need to exhaust the IDEA administrative procedures on your IDEA claim, in a circumstance where those procedures specifically say you need to engage in a settlement process, presumably in good faith, and if the school comes to you in the settlement process and says, you're right, we were wrong, we're going to give you everything you're asking for, we're going to give you everything you're entitled to under the IDEA, of course the statute wants you to say yes. And that's exactly what happened here. Miguel got an offer of full relief, and he accepted it. That is a success story under the IDEA. It's not a success story in total. It doesn't make Miguel completely whole, because he suffered other damages as well, but under the IDEA he got everything he was entitled to, and he accepted it. He exhausted it. The two are not entirely unrelated. I mean, in both cases, your claims are going to be based on the denial of an FAPE or FAP. And it's certainly reasonable to assume that the settlement process under the IDEA could well be significant in resolving the other claims. It seems to me that what's unusual in this case is that the school board said, well, don't worry about those, we're going to settle this. I mean, if this were any other type of litigation, the lawyers would want to say, we've got a lot on the table, and let's figure out how to resolve it. And it's not clear to me why you would necessarily or artificially separate those two. And, of course, your friend on the other side has a construction answer to your notion of how the exhaustion works. The relief you're seeking is based on a FAPE. That's what's going to be pertinent in all those cases. Why isn't that? So two points to that, Your Honor. First of all, I think it's certainly true that if you bring the IDEA claim, you could have a settlement discussion that encompasses not just the IDEA claims, but also other claims that you might have that haven't yet been asserted in that process. And I think the normal thing that we would expect is that when parties are bargaining and if the child is going to give up those other claims, they're going to get something in return. In this case, that settlement discussion happened. There was a settlement discussion, and Miguel would have turned down a request to give up ADA rights without any compensation for those ADA rights. And the effect of Sturgis' rule is that if he accepts the settlement on the IDEA claim, it automatically gets rid of, it essentially gives the school a full release, a get-out-of-jail-free card on the ADA liability. And that's just not right. And I think the second thing I was going to say, Your Honor, is that this isn't an artificial limit. This is a limit that comes out of the text of the statute. And Congress was very clear, it shows words very precisely, and it made clear you don't have to exhaust if the relief you're seeking in the non-IDEA claim is not available under the IDEA. And I think in these circumstances, it makes sense to read that language the way you would look at the same words elsewhere in the IDEA. The same word, relief, appears elsewhere, and it means what we say it means. That's the way the word relief is used in other legal contexts. That's consistent and, I think, reinforced by the reasoning of Frye, which says that if you have to go to the hearing officer and the hearing officer would necessarily turn you away empty-handed, we don't want exhaustion in that circumstance. This Court's decision in Carr v. Saul announces the very common-sense principle. This is two terms ago, saying that it makes little sense to require litigants to present claims to adjudicators who are powerless to grant the relief requested. One of the arguments that the respondents make, Mr. Martinez, is that on your reading of the statute, all that a plaintiff has to do is put the words compensatory damages into a complaint, and then the person can head off to federal court ignoring the exhaustion procedures, which Congress did think were important in resolving what to do about the denial of a FAPE. So what is your response to that? I don't think that's going to happen, and the procedures... By tacking compensatory damages onto the complaint, what you're suggesting is that you could sort of circumvent the IDEA process by going and getting all the IDEA remedies, along with ADA remedies for compensatory damages, in court? Absolutely not. If you go to court and you have a claim that asks for relief that is available under the IDEA, and you have not exhausted that request for that relief, the court cannot move forward as to that request for relief. So the court would be required to split it up and send you back on any other claims? Right, it could dismiss the portions of the complaint that are not properly exhausted, or it could give the plaintiff a choice to get rid of the whole case so that the plaintiff could come back later in the whole case. But either way... And is there something a little odd, even supposing that's true, about two parallel proceedings going on in that way, one for damages and the other for, you know, the relief that an IDEA officer can give? I don't think there's anything odd. I think sometimes this sort of situation comes up in the law, and I think there's a very ready response to that, which is that if a court thinks that there's an agency considering a similar factual scenario dealing with similar issues, what the court can just do is issue a stay. We think that would be perfectly appropriate if this court wants to say that in the cases... And we think there will be rare cases where parallel proceedings are pending. But why rare? I think it will be rare because most parents are going to do what Miguel did here, which is not bring the parallel proceeding. Rather, in the real world, the way these cases tend to be litigated, parents do not typically have a lot of resources. Their lawyers are busy, they are busy, and usually they're not going to try to be litigating simultaneously similar sets of facts in two different forums. They're going to do one and then the other. As the Chief pointed out, it's possible that you could reach some sort of global settlement that comes out of the IDEA discussion that actually is going to resolve and give you effective relief on your ADA claim as well. Even if it is odd, though, Mr Martinez, isn't that exactly what the statute seems to contemplate? I mean, I guess I'm wondering whether or not we're even in a position to question the notion of dual proceedings given that, at least as I read the statute, Congress is contemplating that you'll have a situation in which there's a civil action that's seeking relief that is not available under the IDEA. So I take this to mean that Congress thought that dual actions, at least in some circumstances, were possible, and that was fine. I think that's exactly right under the statute, and I think that the nice thing about the statute is that it doesn't take away the inherent discretion of district courts to manage their dockets in this way. And if you thought, or five of you thought, that it was important to give some guidance to lower courts and sort of remind them that if they wanted to stay parallel proceedings, if you were concerned about that, you could do that. On the other hand, Justice Jackson, I think you are right that the statute does not seem to say that it has to be a stay. I mean, in my view, and maybe you can just react to that, isn't what really is going on here that Congress was concerned about people doing an end run around the IDEA in a certain way? That is, you have a set of facts concerning the denial of a fake that could give rise to claims under, let's say, both of these statutes, the IDEA and the ADA, and the plaintiff is the master of their complaint and can decide which statute to bring it under. And so in a situation in which the relief that is being asked for is only the kind of relief that is available under the IDEA, maybe Congress didn't want the person to call that an ADA statute and thereby get around the exhaustion. But if you are asking for something else, if your claim is something else, then Congress didn't have a problem with both of those proceeding in tandem. I think that's an absolutely fair way of looking at the statute, and there's certainly no circumvention concern when the only thing you need is something that you can't get under the IDEA. Well, what do you, Mr. Martinez, what do you make of the fact that 1415F uses the term remedies and then also uses the term relief? Are you talking about the 1415L, the exhaustion provision? I'm sorry, yes, that's what I'm talking about. I think that I don't make much of that, Your Honor, because I think that whatever remedies might mean, relief really only has one reasonable meaning here, and it means the specific remedies you can get at the end of the day. Well, why would they? Compensatory damage is a remedy. Why wouldn't they use the term remedies there? I think they could have used the term remedies there, but I don't think that they had to. This is elegant variation? Yes, and there are other places in the U.S. Code where you have these terms remedies and relief used in close proximity without any reason to think that they mean something different. There are two examples I'd point you to, Your Honor. These aren't in the briefs, but 18 U.S.C. 3626D, 28 U.S.C. 3306. Like, these statutes sometimes just use these terms interchangeably. The other side says that remedies actually has a different meaning as well, a means of enforcement meaning, which I think got a little bit of discussion yesterday. But even if that were true, that wouldn't affect the statutory term at issue here. How have the courts of appeals interpreted this provision? The courts of appeals have generally not agreed with our first argument, which is that the text of the statute has to come out our way, although I would note that two of the courts of appeals have done that, although they've acknowledged that our side has the better textual argument. I think the First Circuit and the Fifth Circuit have said that. Judge Bumate's dissenting opinion in the Ninth Circuit, I think, makes the same point pretty well. The courts of appeals have generally agreed with us on our futility argument, which is that the settlement constitutes futility. And I think that one thing that's important here is, we have a bunch of different arguments, and they're kind of confusing. Actually, it's confusing to kind of distinguish them. I think that one thing that's really important here is to look at the net effect of Sturgis' responses. And maybe you could think, okay, they have a fair point on this argument or a fair point on that argument. But if you step back from all of it, the bottom line position, the bottom line place that Sturgis arrives at is that a parent who does everything right, Miguel's parents and Miguel, they did everything right. They accepted the settlement. They lose their ADA claim. That just can't be right. I mean, imagine, put yourself in a parent's position. They have wonderful claims under both the IDEA and the ADA. Say their child has been denied a FAPE, sent to a room for disabled children, and there has suffered medical injuries. They've got claims under both statutes. And then the school comes to them and says, okay, we know you're desperate to get a new IEP, desperate to remedy your immediate on-the-ground denial of FAPE. We're going to give you that. What do you want the parent to do? What does Sturgis want the parent to do? Apparently, Sturgis says there are two answers. Number one, you can accept the settlement, but the price of accepting the settlement, even though the settlement doesn't give up ADA rights, is to extinguish your ADA rights. But when you have a situation like this, the result, the nature of the settlement, could reflect a strategic choice on the part of both parties. It could also reflect bad lawyering on the part of one or both parties. If it's the latter, why does this case make that much difference? I mean, the parent's attorneys, maybe they may not be that sophisticated, but both parties could have discussed whether they wanted to wrap up the whole thing in the settlement. They could have done that. Or they could say, well, we're not going to do that, and we'll take our chances later in litigation. Well, I think your point about how the settlement negotiations would play out is extremely important, and I think it favors us, because our rule would allow the parties to come together. If they can reach a global settlement of everything, terrific. But if they can only reach a partial settlement, if they can only reach a settlement that addresses the IDEA claims, our rule would say, yes, of course, in that case, the student and the parent should accept that settlement, get the on-the-ground faith relief immediately, and then the parties can agree to go on and fight about the ADA claims for relief later. Then the settlement could have specifically preserved the other claims, too. Well, I think under their rule it could not, because under their rule, if you accept the settlement, you automatically extinguish your ADA claims. So our rule allows the parties the sort of freedom of contract. Their rule says if you're not willing to give up the ADA claims, you can't get anything by settlement, because the effect of the settlement is to give up everything. That rule doesn't make sense. Thank you. Justice Thomas? Just back to my original question. Can you think of another area in which the claim that is exhaustive doesn't naturally fit the claim that you're trying to pursue? I think this is a one-of-a-kind statute, Your Honor, and I'm not aware of any statute like that. And much of the difficulty seems to flow from the fact that it doesn't. It isn't a natural progression of rights. Normally you have informal, administrative, and then judicial, all about the very same thing, pursuing the similar remedies at different stages. This is a different remedy under a different statute. So I'm just wondering if there's anything close to it. Is there an analog? I don't know of any analog. I will say one thing, because I think your comment really emphasizes and underscores one thing that's important about how this Court has always talked about and interpreted exhaustion requirements. It's not like exhaustion is like some sort of one-size-fits-all rule that you apply mechanically in every case. What the Court has said is that exhaustion means going through the administrative procedures to an appropriate conclusion, and that that needs to be looked at given the particulars of the statutory and administrative scheme at issue. And in this case, where you have a one-of-a-kind administrative scheme that sort of bizarrely requires you to exhaust procedures for one claim before bringing a different claim, it makes perfect sense to treat a settlement agreement, which is a preferred resolution, not just appropriate, but preferred resolution of the IDEA claim, it makes perfect sense to treat that preferred resolution as an appropriate conclusion of the IDEA process that at that point constitutes settlement and allows you to bring your IDEA claim for different relief. Justice O'Neill? Under FRI, is the gravamen of petitioner's complaint the denial of a faith? Your Honor, we challenge that and we litigate that below. As the case comes to this Court, we are no longer challenging that. And so for purposes of your decision, we think that the FRI, the gravamen is the same. The gravamen of the case does involve a faith denial. So we haven't pressed that here. An earlier answer to Justice Alito's question, you said that according to the court below, which is sort of the difficulty with it, if you win an IDEA case, you then can't pursue any other remedies, correct? That was the logic of the court below, and we strongly disagree with that logic. Clearly. But putting that aside, let's assume the parallel litigation question. We know in the normal course of things, the agency findings under the IDEA are given deference by the court reviewing it, correct? I think it depends what you mean by deference, but certainly respectful consideration. But I don't think they're binding, and the parents are allowed to bring in new evidence. Yes, but there is some deference. Does the same hold true under an ADA claim? No, Your Honor. Congress has not decided to require ADA district court judges to even respectfully consider what's happened before in the agency proceeding on a different statute. So there's two separate proceedings mandated by circumstances. This odd creature, platypus, that has been created. That's right, Your Honor. This is Kagan. Worstich. Kavanaugh. Justice Barrett. Mr. Martinez, as a practical matter, could your client, under your friend on the other side's view, have tried to proceed on, I assume, no parallel litigation, holding on to the ADA claim, as your client did here, proceeds through, gets the settlement, but rejects the settlement. Is there any way he could have even kept the ADA claim alive and then gone to district court and filed both of them? I'm sorry, Your Honor. Can you just clarify? There's a settlement offer on the ADA claim. Settlement offer, yes. Is it accepted or rejected? Well, rejected because your client wants to exhaust, right? Oh, under his rule, yes. Exactly, under his rule. So your client could have done that. Right. I think that the net effect of that rule is that if we had wanted to preserve our ADA rights, we would have been required to reject the settlement, litigate for a full conclusion, and lose. And give up attorney's fees, right? Because if you rejected a reasonable settlement offer, the statute says that you don't get attorney's fees for subsequent services. If you get less relief than you would have gotten in the settlement, then you give up your attorney's fees, which is another reason to conclude that the statute really wants you to settle if you can reach a reasonable settlement. Right. Thank you. Justice Jackson? Yes. Your brief at one point references some of the legislative history, and I just wanted to give you a chance to reflect on what Congress's actual intentions may have been with respect to the enactment of this provision. So I think the legislative history in two places is helpful, both in illustrating Congress's intentions and also in confirming the original public meaning of the statutory text that was enacted. For purposes of our first argument, I think the most important thing is the House report at page 7. And what it says there is that it's interpreting the language that ultimately became law, and it said that exhaustion is not required when, and I'm quoting, the hearing officer lacks the authority to grant the relief sought. So that just confirms our textual argument that if you're seeking relief that's not available, you don't have to exhaust because there the hearing officer wouldn't grant relief. I think the legislative history is also helpful on our argument that the best way to think about the settlement is that it constitutes exhaustion or supports a futility argument. And there I'd point you to the Senate report, which says that, and here I'm quoting again, exhaustion of administrative remedies would be excused where they would not be required to be exhausted under the IDEA, such as when resort to those proceedings would be futile. And so that recognizes that there is a futility exception that is available under this statute. Isn't that also helpful with your first argument insofar as, you know, again, if you're sort of conceptualizing it the way that I am, which is exhaustion being only required for the same relief and to the same extent that it would be as if you were bringing the other claim. So Congress was trying, I think, to prevent the end run scenario. You can't just call an IDEA claim, an ADA claim, and get out of exhausting it to the same extent as you would have to if it was labeled IDEA. I think you're absolutely right. I think that that futility argument would also apply. I think, you know, the fact that it's futile to go to an agency officer official and ask for money damages when they can't give you money damages, I think that is an example of futility. I will say that the courts of appeals that have looked at this have said that there is, have generally said that there is a futility exception. Eleven circuits have said that, although they generally have not treated a request for a different type of damages as futility. But I think you're right, Justice Jackson, that that language and the futility sort of concept here, you know, would give us, get to the same place. And I think actually the text of the statute in many ways is intended to codify that general idea. Thank you, Counsel. Mr. Yang? Mr. Chief Justice, and may it please the Court, the path Petitioner took in this case was exactly right. He settled his IDEA claim, obtained prompt educational relief, and then filed a separate IDEA action for compensatory damages, things he couldn't get under the IDEA. But under the Sixth Circuit's ruling, Petitioner would have had to reject a favorable IDEA settlement and forgo the attorney's fees, delay needed educational relief, and pursue pointless administrative proceedings that cannot provide remedies that the ADA provides, simply pursue the remedies that he already secured by settlement. That makes no sense. The ruling, the Sixth Circuit did it in three important ways. First, the exhaustion requirement does not apply if Petitioner's, because Petitioner's ADA claim seeks relief that is not also available under the IDEA. The whole point of the exhaustion requirement here is if you're seeking the same relief, Congress wanted to have you go through the IDEA first. Second, it would be futile to do it. And third, settlement in this context is exhaustion. We welcome the Court's questions. The second or the third, if the first were bypassed? If the Court bypasses the issue that it reserved in fraud, the seeking relief question, the government would prefer the Court to address the futility argument first. And the reason is that futility, the Sixth Circuit's decision sweeps much broader than just this context. It held that Honig's discussion of futility was notwithstanding two subsequent recodifications. And that is a problem both for schools and for parents. As Honig himself reflects, schools can invoke the futility exception in cases where they need to remove a student. Now, subsequently, in Subsection K, Congress has made that easier for students that either bring a gun or drugs to school or who have already caused serious bodily harm to someone else. But there remains the need to go to court quickly in some context. And that is how the courts have always done it, through the futility exception. You say you want us to decide futility first? No, no, no. If we bypass the first question about whether the exhaustion requirement, that's exactly as I understood it. Yes. In terms of the order of operations, I think the court should just decide the logically antecedent question first, even though the futility issue is important. Oh, okay. Suppose there were no IDEA. Could Petitioner prevail on a straight ADA claim? And if so, what would be the nature of the claim? Well, we're not going to take a position on the specifics of this case being adjudicated under the ADA, but he certainly has a viable claim that can be litigated, which is that he was. I'll rephrase it. I don't want to ask a question about this that's specific to this case. What would be the nature of an ADA claim for a situation in which a student was not given a FAPE without the IDEA being on the books? What would it be? The student would have to argue that there was a denial of reasonable accommodation. Is that what it would be? Yes. This is on page six of our brief. Title II of the ADA's discrimination provision has been flushed out in regulations. The regulations require the public entity to furnish appropriate auxiliary aids and services, which include qualified interpreters for the deaf, where necessary to afford the individuals an equal opportunity to participate in and enjoy the benefits of the service program activity. The claim would be based on that. It would not be based on the denial of FAPE. A FAPE is not seen as a non-accommodation. But that regulation is based on reasonable accommodation, am I correct? It is based on the anti-discrimination provision, yes. The elements of an ADA claim and an IDEA claim are different, aren't they? They are. In order to obtain damages under the ADA, for instance, you need to establish some type of intentional conduct. Most courts of appeals have concluded that you need to show deliberate indifference. Also, there are certain defenses under the ADA, undue burden, fundamental alteration, and also just the element of the discrimination claim is itself different. You now have to establish that there's a violation of a FAPE. When you said before, Mr. Yang, that the court should decide the antecedent question first, the logically antecedent question, is there any other reason than, oh, it's logically antecedent, that you would rather have us decide that question? I guess what I'm asking is, what is the more important question, practically speaking? Practically speaking, it's probably futility, but not because of the settlement context. However, I think the logically antecedent question is useful to answer because it tells you a bit about what the whole futility requirement and the exhaustion requirement means in the statute. And it's worth thinking, what would exhaustion look like if the Sixth Circuit were right here? And I think this helps to inform the case. It's even odd, I think, Justice Thomas, you were touching upon this, it's odd to even contemplate exhausting a claim under the IDEA where you can't get the very thing that the claim asks for, which is compensatory damage. The claim lacks merit, as respondents acknowledge. So what would you do? You'd go to the hearing officer and say, I want compensatory damages under the IDEA. And the hearing officers say, wow, you can't get compensatory damages under the IDEA. I dismiss your claim. Well, what's the point of this? It just makes no sense. It makes no sense under your view because you're thinking of relief as a remedy. If you think of the relief as correction or fixing the flaws in the education, the denial of a fate, if you think of that, then it does make sense. But that just can't, I don't think, be fairly squared with the text. Because relief has, in the legal context, as Fry acknowledged, has a very specific meaning, and that is the redress or benefit that you ask of the court and that the court can provide. Well, you might call that a remedy. I mean, their argument is that those are two different words, and you're treating them as if they mean the same thing. Remedy has two different meanings, again, as you touched upon yesterday. One is the meaning that we advocate and I think that Fry already used. The second is the process or the means of obtaining relief. But that can't be the case here because the statute asks that the action is seeking relief. You don't seek a process. And when you said Fry uses this understanding of relief, I mean, it does right there. This is the part of the opinion that's unanimous. The ordinary meaning of relief in the context of a lawsuit is the redress or benefit that attends a favorable judgment lacks law diction. And I think this is, in the legal context, this is the only reasonable interpretation of relief. It's not like I'm saying it's hot outside, I'm going inside for relief. I mean, that's a meaning of relief in a non-legal context, and maybe colloquially we might have some weight here. I think not. But when you're talking to lawyers and Congress is talking about exhausting the procedures under a statute, it's not a relief. Relief could mean relief for the denial of a fate. And Mr. Martinez agrees that the gravamen of a complaint here is the denial of a fate. I don't think it can mean that either because the whole premise is that it's a non-IDE action under such law as seeking relief that's also available. Now, it's true that in order to be also available under the IDEA, the gravamen has to be for the denial of a fate. But the relief that you're seeking under the ADA is not for the denial of a fate. It is something that you're seeking, like compensatory damages. Does the ADA require a school to provide auxiliary aids regardless of the cost? Does the ADA? Yes. No. Because there is an exception for substantial burden, financial or administrative burden. This is one follow-up. Does a fate sometimes require very expensive expenditures by a district, expenditures that would exceed what could be obtained under the ADA? I think in some context that would be true. Again, this is all very contextual, right? It depends on what we're talking about, but that's certainly possible. Yes, I was just wondering whether part of your answer to the Chief Justice's question about, I guess, a total overlap in the claims is the first part of 1415. In other words, the statute suggests that you would have some ability to bring a claim under the ADA that is different from or outside of the IDEA and that Congress wanted, as Mr. Martinez said, for you to be able to do both. Is that right? I think Congress did contemplate that you could do both. That's why it focused on an action of seeking relief that's available. And then only in that specific context did Congress want you to go through the IDEA process. And that makes sense because when you're seeking the same relief that's available, you're talking about educational relief, and the IDEA process has a pretty quick way of resolving that. Plus, it builds into the front end of that, getting the parties together to try to resolve this collaboratively, which results in settlement. And if you were forced to bring your ADA claim through the exhaustive procedures of the IDEA, even if you were looking for different relief, wouldn't that be limiting the rights, procedures, and remedies available under the ADA in a way that Congress says that you want to do? It would, but also, as I was discussing earlier, it just makes no sense. Because what is a hearing officer to do, right? You bring an ADA claim where you're seeking relief, this ADA-type relief. I'm a hearing officer. I mean, Fry says a hearing officer does not, in so many words, a hearing officer does not have authority under the IDEA to decide an ADA claim. I mean, there's just nothing to do that. What would happen here is exactly what happened here, which is the hearing officer dismisses the ADA claim or dismisses the claim for ADA relief. And it would be a losing claim, as you were saying to Justice Alito, that you can't recover under the ADA simply because you didn't get a fate. It's not the same thing. And if that's all you're seeking, if your only claim, I mean, here there are claims for emotional distress and other sorts of compensatory relief, right, for damages, backward-looking damages. But if all you've got is you didn't give me a fate and you owed me a fate and you can't make out the elements of the ADA claim, you just lose, right? So you can't just tack on compensatory damages at the end of your request for IDEA relief. That's just not going to work. I think that's right. And if you did have a case where you were seeking things that could have been sought under the IDEA and you haven't exhausted, and then you're seeking compensatory damages or something that wasn't, we think the right result, this is supported by the court's decision in Jones v. Bach. It's also analogous to Article 3 standing, where you have to show Article 3 standing for each form of relief that you're seeking. You would just hive off the problematic type of relief and proceed. So, you know, it's a little difficult to understand where the Sixth Circuit was going on this. I think they may have lost the forest a bit for the trees. But if you answer QP1 first and you explain that the relief sought has to be relief that is actually available under the IDEA, I think it solves a lot of the problems. That would leave the futility question, Justice Kagan, unresolved, but you'll take the Sixth Circuit's decision off the books. And given that you got Honey, you got all the other courts of appeals, you got gratification twice, I'm pretty confident we can, you know, fix that going forward, hopefully, in the Sixth Circuit. But, again, you can decide how you want to decide the case, whether it's the first issue or the second issue, which can be decided in two ways. Is there much parallel litigation now? Most of the court of appeals require going through the IDEA, but if you do and settle or you lose... Well, I think there's two things that you might be talking to, and I can address both. First, on QP1, whether having a purely non-IDEA relief type of claim can proceed. There used to be a circuit split. There was, at least at the time the court granted Fry. The Ninth Circuit, in a case called Payne in 2011, adopted the view that we advocate. And that was, I think, probably the basis for the court granting Fry. However, after ten years living with that rule, the Ninth Circuit has gone the other way. But in those ten years, remember the Ninth Circuit is nine states, two territories, and about 20% of the U.S. population. No one has identified a single instance, maybe there's a few, of this becoming a problem. And I think that really touches upon the recognition that the court had in Rowley, which is parents have every incentive to proceed IDEA relief. It's a speedy path, and it concerns the education of their children where time is of the essence. They're realistically going to go after IDEA relief and then pursue, as my friend explained, ADA relief later. And I think the ten years in the Tenth Circuit, without the ability of the other side to identify any problem, speaks to that. The second issue is about the settlement. We've had three circuits, as we explained in our imitation brief, that have our rule about futility. The Third Circuit, the Ninth Circuit, and the Tenth Circuit. And that's been since the Third Circuit, 1995. Again, no untoward results. Again, I think this speaks to the recognition of the court in Rowley. The parents are going to pursue IDEA relief. It is quick, it is fast, and it is important when we're talking about ongoing educational relief for your own kids. Justice Kagan? I'm wondering, Mr. Yang, if the SG has given any thought to what kinds of compensatory relief are available after Cummings. I mean, is there any at this point, and for what? We've not taken a position, either in this case or subsequently. I know there is an argument that is being presented, or will be presented, should this case be litigated, that Cummings forecloses ADA relief for emotional damages. There's also an argument that precludes the other types of compensatory damages. We're just not taking a position on this. In this case, our position is that Petitioner clearly was entitled to at least litigate those questions. Justice Gorsuch? Justice Jackson? Thank you, Counsel. Thank you. Mr. Brzezinski?  When Congress enacted Section 1415L, it channeled all fake denial claims through the IDEA's exhaustion procedures. Congress carefully crafted those procedures, and it wanted parents and school districts to go through them because of the primacy of a fake. Congress's choice helps answer both questions presented, plus the third that Mr. Perez wants to add. On the first question, Congress's choice shows that the word relief in 1415L means redress for harm, not a specific remedy. When a plaintiff complains of a fake denial, relief is available under the IDEA, and the plaintiff must exhaust. Any other test would allow plaintiffs to circumvent the exhaustion requirement Congress carefully crafted by using the magic word damages and going straight to court. On the futility question, Congress's choice explains the unusually specific words that Congress wrote. A plaintiff must exhaust to the same extent as would be required had the action been brought under the IDEA. That directive reflects Congress's focus on delivering a fake, and it makes two things clear. One, exhausting a non-IDEA claim means obtaining an administrative decision from an educational expert, just as an IDEA plaintiff must do before going to court. That's why Mr. Perez's improper new argument that settles equals exhaustion is incorrect. An IDEA plaintiff cannot sue after settling. Thus, neither can a non-IDEA plaintiff. Two, settlement doesn't excuse exhaustion. Neither the unavailability of damages nor settlement constitutes futility under the IDEA. Futility may excuse exhaustion where a court can grant relief that a hearing officer can't. But neither a hearing officer nor a court can award IDEA damages or adjudicate a settled claim. Thus, to the same extent, neither the unavailability of damages nor settlement constitutes futility for an IDEA claim. I welcome the Court's questions. Couldn't you have solved this problem or precluded this, obviated this problem by obtaining a general release in your settlement? I think we could have, and I think that going forward, whatever rule the Court adopts here will ultimately function as just a default rule. If the Court were to adopt our rule, then plaintiffs could insist on either complete compensation or a waiver of the exhaustion requirement as the price for a FAPE settlement. If the Court adopts Mr. Perez's rule, then school districts could insist, if they wanted to, on a global release, or if they were willing to proceed with litigation later on in an ADA claim, they could do that as well. At bottom, we're just talking about a default rule here. Are there any other actions that are required to be exhausted that you must exhaust the IDEA claim before you pursue them? For example, let's say there's a tort action as a result of a student being injured as a result of poor training. Would that be required to be exhausted? Justice Thomas, if it's a state law tort action, which I understand to be the premise of your question, then I think no, you would not have IDEA exhaustion, and that's because of the language of 1415L, which says nothing should be construed to restrict rights under the Constitution, the ADA, the Rehabilitation Act, or other federal laws. So was there, before you had L, this provision, 1415L, did you have an exhaustion requirement? Before 1415L, 1415L was a response to the Court's decision in Smith. And under the Court's understanding in Smith, all FAPE-related claims had to proceed through the IDEA exclusively. So an exhaustion requirement wasn't really relevant because you simply couldn't bring non-IDEA FAPE claims at all. Isn't that what's happening here with your interpretation of the statute? I mean, that's sort of what concerns me, that it was clear that you were right, that there was an attempt on the part of Congress to respond to Smith, and it would seem as though Congress was trying to make clear with the statutory language that we're interpreting that they did not want all claims arising out of these circumstances to have to go through the process. So how do you square the kind of abrogation piece of this with your argument? Justice Jackson, two points, one about the history and context, and the other about the language of the statute that Congress actually enacted. With respect to the history and context, Smith really did three things, and Congress's response was not to overturn all of them. One, Smith said no attorney's fees under the IDEA, Congress changed that. Two, Smith said no non-IDEA FAPE claims, and 1415L did overturn that. But the third thing Smith said was that it had a concern with circumventing the IDEA's procedures, and Congress, in fact, reaffirmed that concern by, on the one hand, allowing non-IDEA FAPE claims to be brought, but on the other hand, channeling them first through the IDEA's exhaustion procedure. But that's not what the language says. If the language says to the extent or if they are seeking the same relief, number one, and if we read it the way that you want to read it, don't we end up going back to the part of Smith that you even agree Congress overturned, which is the part about whether or not we can have non-IDEA FAPE claims, because as Justice Barrett pointed out earlier, you know, through your analysis, it would seem as though you wouldn't have any ability to bring an ADA claim if someone, you know, is successful on the IDEA claim. Justice Jackson, I don't think that that is the result of our analysis, and I also don't think that is the correct textual reading of the statute. The result of our analysis does allow for non-IDEA FAPE claims to be brought once the IDEA's exhaustion procedures have been followed. So all we're talking about here is that if you have a FAPE claim, you bring that to the IDEA hearing officer first. You get a FAPE, which is the primary relief that the IDEA is concerned with, and once you have that, if you think you have an ADA claim to pursue, you can pursue that some number of months later. But Congress's focus, first and foremost, was on making sure that the child gets a FAPE. With respect to the statutory text, I think all of this comes down to how we interpret, or how you interpret, the word relief in 1415L. And the word relief read in isolation can mean one of two things. It can either mean redress for a harm, or it can mean a specific remedy. The better reading here is that it means redress for a harm. That is consistent with how Fry understood the term relief. Fry said... I'm sorry, your point is that denial of a FAPE is the same harm in both cases? Yes. In the ADA and under the IDEA? If you have a case, as I think is stipulated at this point in this court, where the gravamen of the complaint is the denial of a FAPE, then that is the harm that is being redressed. You could have litigated this as a straight ADA claim and gone through the whole process without using the acronyms for FAPE, right? There's no necessity to prove or focus on or whatever under the ADA claim. Nothing under the ADA says you have to have a FAPE, right? Well, Mr. Chief Justice, I think Fry is trying to address this question by saying that whatever label the plaintiff puts on the complaint, or on the claim, the court looks to see what the gravamen of the complaint is. And is the gravamen of the complaint the denial of a FAPE, whatever you might call it in your complaint, or is it something else? And in this case, I think using the two guideposts that Fry provides, one, could an adult at a school have brought the same claim? No, because the claim is about the denial of an education. Could a child at another public facility like a library have brought the same claim? No, for the same reason, because at bottom, what's alleged here is the denial of a proper education. And so that, under the Fry analysis, I don't think it's a question presented here, but it makes that the gravamen of the complaint there. Mr. Dvoretsky, just going back to this question of what relief means and whether you're seeking relief that's also available under the IDEA when you're seeking damages, I would have thought that the first blush and maybe also the second blush and third blush reading of that is, well, no, if you're seeking damages, then you're not seeking relief that's also available under the IDEA. That's exactly how the rest of 1415 uses relief, so that there are a couple of different provisions in the same statutory section. One says it directs the court to grant such relief as it determines is appropriate. So, you know, it's like, are you granting an injunction? Are you granting damages? Another prohibits attorney's fees if the court finds that the relief obtained isn't more favorable to the parents than the offer of settlement. Again, it's relief in the normal sense. You know, what did you get? How much money was put on the table? It's just a normal wording of the word relief, the one that comes out of Black's Law Dictionary, that Fry quotes, which is like, I'm seeking damages. That's not relief that's available under the IDEA. Justice Kagan, I think that redress can also bear a different meaning, which is not just the specific remedy that you're asking for, but redress for a harm. It's a kind of situation where you may not get what you ask for, but you get what you need, and if you bring a fake denial claim seeking damages to an IDEA hearing officer, you're not going to get damages because the IDEA doesn't give you that, but you will get a fake, and that is redress for the harm of denial of a fake. With respect to how Fry used the term, Fry said relief is the redress or benefit that attends a favorable judgment. It didn't say redress, the specific redress or benefit demanded by the plaintiff that attends a favorable judgment. With respect to the other uses of relief in the IDEA, again, I think relief in isolation can bear different meanings. Well, these provisions that are surrounding the very provision that we're supposed to interpret, which are clearly using the term relief to mean something very different from what you're saying. Justice Kagan, I respectfully disagree with that reading of the word relief in the other provisions as well. If you look at those two provisions, one talks about how the court shall grant such relief as the court determines is appropriate. That's my you get what you need, not necessarily what you want understanding of relief. The court will grant whatever relief is appropriate, regardless of what relief you have specifically asked for. The other example is in the settlement context. No fees if the relief finally obtained is less favorable than the settlement offer. Under Mr. Perez's understanding of relief, what relief really means is a type of relief. That understanding doesn't plug in to that settlement provision. How do you compare different types of relief as being more or less favorable? It's apples and oranges. And so I don't actually think that playing the isolated definition game of looking at relief in different contexts gets you very far here. I think the real question is, what did Congress mean when it used the word relief in 1415L, and which of the two plausible understandings of that term did Congress mean to adopt? Our understanding makes more sense here for a few reasons. Before you go into those reasons, the question is, what did Congress intend as you started out? How do you respond to opposing counsel's reference to the legislative history, and in particular the statement in the House report where Congress says it's not appropriate to require the use of the exhaustion process if an IDEA hearing officer lacks the authority to grant the relief sought? Justice Jackson, this was a compromise bill that went through a number of different iterations, and I just don't think that there is much, if any, weight that can be placed on legislative history to shed light on that. I think if we look at the purposes that Congress was more broadly trying to achieve here, the main purpose of the IDEA, and it says this in its first declaration of purpose, is to ensure that all children with disabilities have available to them a FAPE. The exhaustion requirement is designed to address that FAPE requirement right away. That's for IDEA claims, but what about the purposes of the other non-IDEA statutes which Congress is clearly preserving here? Congress is preserving them, but the second half of 1415L channels those through the IDEA's exhaustion procedures, and the reason for that is because of the primacy of getting a FAPE under the IDEA. The exhaustion requirement is designed to say you can pursue your other claims later, but first and foremost, you have to try to get a FAPE because that's what's in the best interest of the child, and you have to go through the IDEA's procedures in order to do that. Rather than allowing parents to choose a particular remedy that they might prefer under other statutes by going straight to court. FRI, I think, also reflects that insight in that it recognizes the primacy of the FAPE in asking whether the grovelment of a complaint is the denial of the FAPE. Reading relief to mean the redress that the IDEA provides also avoids a circumvention problem because circumvention and going straight to court may, first of all, deprive the child of a FAPE by focusing on damages and not requiring parents to go through the FAPE process. Second, it deprives both parents and schools of help from educational experts, which Article III judges are not. I think Congress recognized that there are educational experts in the agencies who ought to address these sorts of issues first. And third, the circumvention and going straight to court would put the FAPE question before inexpert Article III judges without the benefit of getting findings in a decision, which is what the IDEA's exhaustion procedures require, from an educational expert. Which of the two default rules better serves the objectives of the IDEA? It depends which question we're talking about. What we have been talking about... You said earlier that what we're talking about is the default rule, and the default rule could either be the one you'd like or the one that Mr. Martinez likes. Which one better serves the objectives of the IDEA? To clarify, Justice Alito, I think that the notion of a default rule only comes into play on the second and third questions presented here about what happens after a settlement. The question that we have, I think, mostly been talking about here is the first question presented, which goes beyond the context of a settlement. I think Mr. Martinez is asking for a rule where whenever a plaintiff seeks monetary damages, that gets you out of the exhaustion requirement in 1415L. As to that rule, that's not a default rule principle at play there. That would be an absolute rule outside the context of settlement. With respect to the default rule, I think that only comes up in a situation, which will probably be rare after this case, where you have a settlement that doesn't speak one way or another to what happens to future ADA claims. On that, I just want to press you on that assertion, because your friend on the other side says no. If we were to adopt your rule, the parties couldn't contract to allow an ADA claim to be brought later, that a settlement would itself extinguish the potential for an ADA claim. Your theory of exhaustion requires proceeding through the administrative process altogether. Do you want to respond to that? Yes. I don't think that's right, Justice Gorsuch. I think that the exhaustion requirement under the IDEA, in light of this Court's clear statement rule, although it's not a fourth question presented here, I don't think the Court would likely find that the exhaustion requirement is a jurisdictional one. And so it is something that either way, whether you adopt our rule or... Absent waiver by the other side, it would operate in the way Mr. Martinez suggests, wouldn't it? Absent a waiver, it would, and that, I think, takes us to the default rule point. But either way... Okay. And on that, with respect to futility, it seems like most of the courts of appeals have gravitated around a rule that a futility exception does exist here. And what's wrong with that rule, and how is it operated in a way that's problematic in your view? Justice Gorsuch, I think it depends precisely what futility rule we are talking about and futility with respect to what. 1415L is setting up, and I think your opinion in the AFK... Oh, do not invoke my opinions below. That's dangerous counsel. Every lawyer knows that's dangerous. I'm bound by circuit precedent and arguments that weren't made to me. Okay? Here we are with all sorts of excellently lawyered arguments on both sides and no circuit precedent. Proceed with caution. Giving no deference to the Tenth Circuit. I think the Tenth Circuit had it right. Touche. The Tenth Circuit had it right in setting up that the critical question that Congress instructed courts to answer here is whether a plaintiff bringing a non-IDEA claim could invoke futility when bringing that same claim as an IDEA claim. Well, as I recall, the Tenth Circuit has held that the futility exception does exist. It just wasn't present in a particular case you mentioned because the party didn't argue it. So, again, what's wrong with the futility exception as interpreted by most circuits, including my former circuit? There is no futility exception that applies in this situation because of how 1415L operates. What the court needs to look at is whether an IDEA claim would be subject to a futility exception. In other words, if this FAPE-related ADA claim or FAPE-denial ADA claim had been brought as an IDEA claim, would there be a futility exception to that IDEA claim? And the answer to that question is no. The relevant principle of exhaustion. Exhaustion is excused as futile when the agency can't grant you some relief that a court could grant you. That's the circumstance in which it makes sense to say we're going to excuse exhaustion. We're going to allow you to skip over the first-level decision-maker and go straight to a second-level decision-maker who can help you. That principle doesn't apply either as to a damages request or in the settlement context for an IDEA claim. A damages request can't excuse exhaustion as futile because neither a hearing officer nor a court can award damages under the IDEA. The problem is that the IDEA doesn't authorize damages in the first place, not that the hearing officer is somehow uniquely powerless to grant them. Settlement also can't excuse exhaustion as futile. Futility and exhaustion are concepts that really only make sense as preparation for a lawsuit. But when a plaintiff settles his IDEA claim, he extinguishes it. Futility excuses exhaustion so someone can go to court. When the case has been settled, no one's going to court. So whatever futility exceptions there might be in other contexts in the IDEA, those futility exceptions don't logically apply when you have a request for damages or a settlement. But it sounds like you're assuming that the request for damages, that the damages aren't available under the ADA either, right? No. Clearly, everybody is in agreement here that compensatory damages aren't available under the IDEA. But when you said futility wouldn't apply because compensatory damages aren't available, I take that to be that compensatory damages aren't available under the IDEA? I think that the hypothetical inquiry that 1415L requires the court to engage in is what would have happened if the same claim had been brought under the IDEA. We're not talking about exhausting the ADA claim before the hearing officer. We're talking about bringing the fake denial claim before the hearing officer as an IDEA claim. So you're not taking the position that they couldn't later or, let's see, you're not, are you taking the position, I guess it's just hard for me to see how the ADA claim ever gets asserted then? I think if you bring an IDEA claim to a hearing officer, win or lose, whatever happens, you get findings in a decision, at that point you have satisfied 1415L because the procedures of F and G have been exhausted to the same extent as if a claim were brought under the IDEA, which in fact it was. At that point, you go to court having satisfied 1415L. You're breaking with the Sixth Circuit. The Sixth Circuit said if you win the IDEA claim, you're not an aggrieved party, so you can't go and get compensation for your damages. I thought that's what it said. So I think that aggrievement is really not a relevant concept here. Oh, I agree with you. So you're disagreeing with the Sixth Circuit's analysis. Just answer the question. On that point, yes, because I think aggrievement isn't really the relevant concept. What is relevant under 1415I, which as this Court has said Continue answering, Justice Barrett. I just wanted to make sure we were on the same page. And what page was that? I think you've mostly answered. I mean, I guess you are envisioning a world, it seems maybe a very narrow world, in which an ADA claim could be pursued after your vision of exhaustion occurs. I think it could. Whether it's narrow or not may depend on what remedies are ultimately available under the ADA. Which I think in light of Cummings and in light of the same contract analysis that would apply to a lost income claim. Under state law, you generally can't have a breach of contract claim for educational malpractice. And so whether it's an emotional distress claim, whether it's a lost income claim, I don't think that there are meaningful damages that would be available under the ADA given the state of the law right now. But yes, that sort of claim could be brought after exhaustion of the procedures in F&G. Can I ask you maybe the same question as a hypothetical just so that I understand because I think I'm a little confused. So suppose we have a student who has both a viable IDEA claim and a viable ADA claim arising out of the same facts, which is the school is not giving her what she needs to get an appropriate education. But for whatever reason, she only wants to bring the claim for money damages. Maybe she's going into her senior year. She's given up on education. She wants to go to work. So she doesn't want any of the, you know, adjust my education, give me the actual accommodations. She just wants to drop out and go to work and get compensatory damages for the harm that's been caused, she says, by the school's neglect under the ADA. Does she have to exhaust using the procedures in this statute or not? I think she does, but in order to answer that question, I also have to just challenge one premise of it, which is I think that generally speaking, even after you have graduated, you can still get redress for the denial of a FAPE through the IDEA. But not compensatory damages. She doesn't want any of the injunctive relief related to the circumstances of education. So whatever the relief is that she could have gotten from the hearing officer about the state or status of her educational circumstances, she disclaims. All she wants is to be compensated for what she says occurred to her during the period of her education. And so she says, I don't want to bring an IDEA claim, I have an ADA claim. Does she have to sit in front of the hearing officer and talk about ways in which her education could be changed, et cetera? Yes, and I think what she could get under the IDEA in that situation is compensatory education. She can have additional, even after she's graduated, additional... But she doesn't want that. She doesn't want that. She's saying, I'm 18, I don't have to go to school anymore, I don't want to go to school anymore, I'm dropping out, I just want compensatory damages under the ADA. What I'm trying to understand is why do we have a statute, in your view, that would make her exhaust under the IDEA as if she was asking for that other form of relief? Because whatever her preferences as to damages, Congress's priority in enacting the ADA and it's reflected in 1415L was first and foremost to make sure that people get a FAPE. And so the remedy that she would get for the denial of a FAPE may not be immediately her first choice. And you don't see yourself as reading out the first part of the statute that says nothing about this limits the person's remedies or rights under the non-IDEA statute? I don't, because the second part of 1415L starts out by saying, accept that before the filing of a civil action. So the first half is preserving some remedies, but the second half is, by its terms, creating a carve-out. And that carve-out requires FAPE-related claims to be channeled through the IDEA. That may result in a situation, as I say, where the plaintiff doesn't get right off the bat whatever their first choice specific remedy is. They get what the IDEA provides. They have to wait six months or however long it takes to then go to court and seek damages. But Congress's goal in passing the IDEA was to make sure that people get FAPEs, and Congress's prioritization and sequencing of IDEA and non-IDEA claims in 1415L reflect that. With respect to, if I can go back to Justice Alito's earlier question, which I think was, if we are in the world of default rules as to the settlement issue, why is our default rule preferable for that situation? I think a couple of points. One, our default rule leads to global settlement. Global settlement is generally preferred. It is generally preferred because once the parties have agreed on a FAPE, the parents in the school still have to continue to cooperate and work together in that situation. And so having global peace rather than having separate litigation, if you're looking for a default rule, is the better default rule. Second, if you are going to have subsequent litigation, Congress's preference was for that to be informed by administrative findings and decision and the expertise of the educational experts who are involved in the IDEA process. And so if we have to have a default rule, the default rule ought to be against subsequent litigation without that expertise. Third, this is just how the text operates with the somewhat peculiar language of 1415L. To Justice Thomas' point earlier, I'm not aware of another statute that subjects a claim under one statute to exhaustion procedures under another. But that, by its plain terms, is what 1415L is doing. So our default rule honors that text. If you were to create an exception to that, it would potentially open the floodgates to other sorts of exceptions to futility or exhaustion that one might seek, and that's going to lead to uncertainty and further litigation in the lower courts. And lastly, on the equities, as I was saying to Justice Barrett, in light of the state of the law right now, it's not clear that there even are compensatory damages available under the IDEA. And so there is no great inequity in holding, as a default rule, that once you have gotten the FAPE, which was Congress's, again, primary purpose in enacting the IDEA, once you've gotten that, at that point you have gotten... Well, no one's decided that question yet, Mr. Dvoretsky. So while those damages remain open and potentially available, the question is, you know, what should Miguel have done? I think Mr. Martinez stood up and the first words out of his mouth were, Miguel did everything right. And it's hard for me to see how that's not true. What should Miguel have done differently from what he did do in this case? I think a plaintiff in that situation has several options. One is, as part of the settlement, to negotiate whatever compensation he thinks he's entitled to for his non-IDEA claims. Another is to negotiate, as part of the settlement, a waiver from the school of the exhaustion requirement, and then proceed to court. So there were options as part of that global settlement to get the full relief he was asking for. But Sturgis was not, for all we know, offering any of those things. So what's he supposed to do? Negotiate. I mean, as in all settlements. Negotiate better. Just pound his fist on the table with your legal rule, such that Sturgis doesn't have to offer any of those things, because he has two choices. He can either reject a good settlement, which is enabling him to receive educational services, or give up on the potential, which this statute clearly gives him, of getting compensatory damages as well under the ADA. Justice Kagan, I think that takes us back to the default rule point, which is, whichever rule this court adopts, either side could, if it wanted, pound its fist on the table and insist on one outcome or another. Either a plaintiff can insist on getting full recovery or a waiver, or a school district could insist, if it wanted to, on no deal unless it gets a full release. The other point that I'll make as a practical matter, though, and I think it's also true in this case, although these facts haven't been developed because the case hasn't been litigated, school districts have an interest in starting to provide the FAPE. As soon as they are aware, and as soon as their lawyers make them aware, that there has been some deficiency. It's not in a school district's interest to say, we're going to hold the FAPE high. Parents also have an interest in that, and that suggests why your sort of the sky is falling isn't going to happen, because of course parents are not going to bypass the process that gives them, most speedily, most inexpensively, the opportunity to get the education fixed. So yes, they're going to go and try to get that, but at the same time they may also want, I'm entitled under the ADA for damages. Justice Kagan, I don't know that as a practical matter that that view of how parents will operate is always going to be true. I don't know that your view of how school districts are going to operate is always going to be true, as between the two it strikes me that actually it's the parents that have the greater incentive to get the education fixed for their child. This isn't litigation being run by a lot of rapacious lawyers, you know. This is litigation being run by parents who are trying to do right by their kids. And I certainly think that most parents and most school districts are trying to do right by the kids. I absolutely think that that's right. I think part of the reason that we have not seen a rush to the courthouse seeking just damages claims bypassing the IDEA is that the circuits have been aligned. There's been a circuit consensus in favor of our rule on the first question presented that you can't do that if you're going to court and you're seeking damages for what is fundamentally a denial of faith claim. And so when we talk about whether the sky is falling in the real world, the reason that it hasn't been is that the lower courts have aligned around the rule that we're asking this court to adopt in the first question. But what about Mr. Yang's point that the majority rule in the circuits is that the futility exception applies and he pointed out that the sky hasn't fallen even though as a practical matter the futility exception essentially cuts in favor of Mr. Martinez's position on the antecedent question. I don't think that the circuits have adopted a futility, that an overwhelming number of circuits have adopted a futility rule in this context. Lower courts have recognized some futility exceptions to the IDEA, yes, but not futility exceptions for either damages or settlements. The overwhelming weight of authority has been about situations like the one this court addressed in Smith and Honig, for example, where you are challenging the procedures themselves, you might have futility. Where a school district wants to challenge the stay-put provision because of a dangerous child, you might have futility that lets you go straight to court. But it's not this kind of a situation where you're invoking futility in order to avoid exhaustion of a damages claim where you could get relief for denial of faith through the IDEA. Thank you, counsel. Justice Thomas? Can you think of any claim in the context of this case that could have been brought under ADA that need not have been exhausted? Hypothetically, and this is not what was alleged here, but if you had a situation where the plaintiffs wanted to say Mr. Perez was denied educational services, well, I guess this wouldn't be an ADA claim. It could be an equal protection claim, for example, saying he was denied educational services because of his race and compare his treatment to that of this other kid over there. That's a FAPE-related claim, but I think in that situation, the grovement of the complaint isn't really the denial of the FAPE, it's the equal protection claim. So there are some FAPE-related claims that could still be brought, and I think, again, that's the fry question about what is really the grovement of what is being complained about here. Justice Alito? Justice Gorsuch? I do want to just ask you one more question about the relief point, because it seems like you've spent most of your time elsewhere. I understand it. The text says relief that is also available under this subchapter. Just focus with me for a second on just those words. Sure. What about that speaks of grovement? The natural reading for me, at least, would have been to suggest that I look at what relief is legally available or permissible under that subchapter. I don't see grovement hiding in there. I think the way I would read those words is relief can either mean, in the ordinary sense, if I say I got relief from something, that doesn't necessarily mean that I got the relief that I wanted. It just means that my injury was redressed. I understand that as a potential reading. I will spot you that, that sometimes the law uses the word in that sense. What about these words suggest that sense? I think if you look at relief that is also available, those words in isolation don't suggest either sense. I think you need to understand that. I suggest to a judge that he or she should go look and see at what remedies or forms of relief are legally available under this subchapter. I don't think it suggests what forms of relief. It doesn't say what forms of relief. It doesn't say such law is seeking particular types of relief that are also available under this subchapter. Seeking relief that is also available under this subchapter. You're right.  It doesn't say forms, but it does say available under this subchapter. But I think that the lack of saying particular forms is exactly what allows this phrase to be understood in either sense. I don't think that just looking at those five words in isolation tells you one way or another. I think that the context of what Congress was trying to achieve in the IDEA, which as Fry recognized was primarily to ensure that students get a fate first and foremost, that does suggest our reading. Because otherwise parents could circumvent that by going straight to court without the benefit of the educational experts that Congress wanted to put in place and without potentially even getting... I understand your purposivist arguments. I was just curious about your textualist ones. So I think on the textual point, again, I think the text can be read either way. And so at that point, I wouldn't think of it as a purposivist argument as much as I would about a contextual argument, which actually derives from elsewhere in the IDEA's text, including the IDEA's statement that it seeks to ensure the availability of a fate first and foremost. Thank you. Justice Barrett? Justice Jackson? So just going back to what Justice Gorsuch just explored with you, I guess I'm wondering why the word seeking in the statute doesn't undermine your view. I mean, you suggest that you come to the hearing officer and you get what you get and you don't get upset and you don't get to choose. That's what my daughter sometimes says. But don't we have language in the statute just before the five words that you focused on that we have to take into account with respect to what it is that the person is actually seeking? Help me to understand whether you're cutting that out of your scenario or how it squares with your view that it doesn't matter what it is that you really want in terms of your relief. I think it really all comes back, Justice Jackson, to the word relief. When we talk about seeking relief, if I have some injury, somebody broke my arm, I'm seeking medical care for that arm. It doesn't matter whether I think I should have a cast or a sling or what. That might be the specific relief that I'm seeking. But actually, I just go to the doctor and I get redress for my broken arm. And going back to my typo, if I'm seeking money in compensation for the school's failure to accommodate me when I asked for it all those years, is that a separate claim? Is it covered? Do I have to exhaust that? I think that takes us back to the Fry-Gravman question. The way to think about that is that regardless of whether you are seeking money or further education or anything else, what you are seeking at bottom is redress for a FAPE denial. That's what you're seeking. So there's no ADA claim that's preserved? Justice Thomas asked you about what other claims could go on without being exhausted. There's no ADA reasonable accommodations claim that you can bring directly in court under your view? You talked about the equal protection claim. I'm just trying to understand if there's an ADA claim that could be brought. Not if the Gravman of your complaint is seeking a FAPE denial. But again, I think that's just what follows from Fry, that however you frame your complaint, whether you call it a FAPE denial claim or not, we ask what at bottom are you actually seeking? And that's where the two questions of Fry are helpful because they ask could an adult at the school have brought the same claim? Could a student at another public facility have brought the same claim? If the answer is yes, then in that situation, you are not actually seeking a FAPE denial. But if the answer to those questions is no, then whatever you call it, the relief that you're seeking is relief for the denial of a FAPE. It's my broken arm example. Thank you. Thank you. Justice Kagan? I just wanted to ask a question because you've been invoking Fry repeatedly. And of course it's true that Fry specifically reserved the question that we're talking about. It could not have been clearer. It specifically reserved it twice. And it's just kind of not right logic to argue from Fry to your Gravman position. I mean, what Fry said was, look, if you're not objecting to the denial of a FAPE at all, then you're obviously outside the sphere of the exhaustion requirement. And then it said, and then there's another question, which is if you're seeking relief for that denial of a FAPE that's not available under the IDEA, i.e., if you're seeking compensatory damages, which everybody understood not to be available under the IDEA, and that's the question that Fry says nothing about. Is that correct? Justice Kagan, it is, of course, absolutely correct that Fry did not decide this question and reserved that question. I didn't even indicate. I mean, it didn't hint. It didn't provide evidence of. Fry said there's a necessary condition, which is are you objecting to the denial of a FAPE? That's a really different question from is that a sufficient condition, which is the position that you are taking. Justice Kagan, my only point is that there are certain key principles about the IDEA, including the primacy of a FAPE and the importance of the IDEA's procedures that drive the analysis to the question that's before the Court today, and that I think Fry also recognized. Fry recognized those principles. Thank you, Counsel. A rebuttal, Mr. Martinez? Your Honors, I think Sturgis's answer to Justice Kagan's question about Miguel's dilemma really gives away the game here. Their answer is that if Sturgis had refused to cave in, had refused to give Miguel more than it had already negotiated, Miguel would have had to reject the settlement, turn down the immediate FAPE relief, and roll the dice in an IDEA proceeding. It might risk not only his recovery but also his attorney's fees. No way. That's not what this statute is about. And I think what that answer shows is what Sturgis is really seeking here is a rule that's going to nullify ADA rights and it's going to resurrect the regime of Smith v. Robinson that Congress expressly rejected. A couple of additional points. With respect to the text, their interpretation of relief means that if I go and I file an ADA claim and a complaint, and it says in the complaint that I do not want injunctive relief or any other relief that's available under the ADA, in their view, my complaint is still seeking relief that is available under the ADA. That can't possibly be right. It's inconsistent with the dictionaries, inconsistent with FRI, inconsistent with the legislative history, and it's inconsistent with common sense. So they don't have a good textual argument, so they fall back to policy. But policy can't beat text, and it certainly can't beat text here when their circumvention argument doesn't work. Miguel settled and received full FAPE relief. He did not circumvent anything, number one. Number two, in other cases, parents are not going to have an incentive to circumvent because they're going to have to give up all the IDEA relief that they would otherwise have available to them. The ADA claim is going to be harder to prove. They're just not going to do that. They're going to try to maintain and preserve their rights under both statutes. With respect to policy, our rule makes much more sense than their rule. It avoids a pointless exercise in which you have to go to an IDEA hearing officer and ask for relief that the IDEA hearing officer has no authority to give, and it avoids the result in this case where, as we've said repeatedly, Miguel did everything right, he settled, he got the FAPE, and he nonetheless, on their view, has to give up his ADA claims. With respect to the default rule point, Mr. Dvoretsky for the first time says that, oh, what everyone knows you should have had to do is negotiate a waiver of the exhaustion requirement. Well, that's asking a lot for parents who are struggling with kids with disabilities to have to negotiate that fine-tuned waiver, and it's also not clear that it's even available. There's a circuit split right now on the question of whether exhaustion is in fact jurisdictional. So if that rule is in effect, I don't know what parents are supposed to do in circuits that say you can't make such a waiver. At a minimum, it's going to mean that this court is going to have to decide another case involving this provision. I don't think that makes any sense. Finally, with respect to purpose, Mr. Dvoretsky says this is all about the primacy of a FAPE. Of course the IDA is about the primacy of a FAPE. That's exactly what Miguel did when he invoked his IDEA rights, went to the IDA process, and convinced the surges, after having discriminated against him for 12 years, finally convinced the school to give him a FAPE. That was the settlement that he reached. The IDA is also intended, though, to protect other legal rights, and Congress did not intend to force parents of Miguel and other victims of discrimination to give up those rights in order to reach settlements. We ask this court to reverse. Thank you, Your Honors. Thank you, Counsel. The case is submitted.